IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-0006-WJM-TPO

JOSEPH FITZGERALD, by and through his parent and next friend, LINDA FITZGERALD,

    Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO d/b/a ST. ANTHONY SUMMIT MEDICAL CENTER;
SARAH PFEIFFER, P.A.; and
XAN COURVILLE, M.D.,

    Defendants.

---

**ORDER DENYING MOTION TO STRIKE
TESTIMONY OF EXPERT PATRICK MCNAIR, M.D.**

---

Before the Court is Plaintiff Joseph Fitzgerald's Motion to Strike Defendants' Expert Designation of Patrick McNair, M.D. ("Motion") (ECF No. 130). Xan Courville, M.D., Sarah Pfeiffer, P.A., (jointly, "Individual Defendants"), and St. Anthony Summit Medical Center ("Summit") ("collectively, Defendants") filed responses (ECF Nos. 133, 134), to which Fitzgerald filed a reply (ECF No. 137).

For the following reasons, the Court denies the Motion.

**I. PERTINENT BACKGROUND**

This medical negligence lawsuit stems from injuries Fitzgerald sustained after he allegedly developed compartment syndrome while hospitalized due to a snowboarding injury. (ECF No. 67 ¶¶ 14–16, 52–64.) Fitzgerald alleges that Courville and Pfeiffer failed to promptly identify and address his compartment syndrome and that this delay in

care led to avoidable, permanent injury.  (*Id.* ¶¶ 65–76.)  Fitzgerald further alleges that Summit acted negligently by failing to properly train its staff and implement policies that would have prevented his injury.  (*Id.* ¶¶ 77–88.)

In January 2022, Defendants disclosed Dr. Patrick McNair as a non-retained expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(C) and summarized his proffered testimony as follows:

> Dr. McNair is an orthopedic surgeon who provided care and treatment to Plaintiff.  Dr. McNair is expected to testify consistent with his medical records and deposition, if taken.  Dr. McNair first encountered plaintiff in January 2019 and will testify as to his interactions and evaluations with plaintiff and will testify as to his remarks in his medical records and his operative findings.  Dr. McNair, in order to fix Mr. Fitzgerald's tibial plateau fracture, had to open up all the compartments of plaintiff's leg.  He had to take down the anterior tibial muscle and he looked specifically at the medial gastric and the soleus muscle, the deep and superficial compartments posteriorly and saw no further muscle damage.  Dr. McNair will testify about his surgical findings and any discussions he had with plaintiff or his family members.

(ECF No. 130-12 at 11.)  In July 2023, the Court amended the scheduling order, setting the expert witness discovery deadline for April 1, 2024.  (ECF No. 88.)

On May 21, 2024, Summit produced to Fitzgerald a supplemental expert witness disclosure, in which it declared that McNair "will provide expert testimony concerning his care and treatment of [Fitzgerald].  Specifically, he will provide expert opinions that there was no evidence of any injury related to compartment syndrome."  (ECF No. 130-13 at 3.)  Days later, Individual Defendants filed a supplemental expert witness disclosure, in which they repeated the disclosure block-quoted above and added that McNair

> will testify that in his opinion, Mr. Fitzgerald did not have

2

compartment syndrome. Dr. McNair associates compartment syndrome with muscle necrosis or death which did not occur in this case. Dr. McNair will testify consistent with his January 21, 2019 operative report which states that Mr. Fitzgerald's muscles in his right lower extremity, both the proximal and superficial compartments, as well as the deep posterior compartments had viable, healthy active tissue without signs of necrosis. Dr. McNair also found the anterior compartment, which was visualized from the proximal lateral incision, was also healthy and viable without signs of necrosis. Dr. McNair will testify these findings are inconsistent with compartment syndrome. He is also aware of the findings from Dr. Courville's January 6, 2019 fasciotomy which showed no muscle necrosis or death in the compartments and Dr. Courville was able to close the fasciotomy incisions and did not have to keep them open due to muscle swelling which is also inconsistent with compartment syndrome. Dr. McNair will testify that it is his opinion that Mr. Fitzgerald did not have compartment syndrome but instead had an isolated injury to his peroneal nerve.

If Mr. Fitzgerald would have experienced compartment syndrome, Dr. McNair would have expected to see muscle necrosis and swelling at the January 6, 2019 fasciotomy and he would have expected to see continual muscle necrosis at his surgery 2 weeks later on January 21, 2019. Because there was no muscle necrosis at either the January 6, 2019 fasciotomy or the January 21, 2019 ORIF, it is Dr. McNair's opinion that Mr. Fitzgerald did not have a delayed or missed compartment syndrome on January 5 or 6, 2019.

Dr. McNair was aware from treating Mr. Fitzgerald that he had a snowboarding injury on January 5, 2019 where he sustained a high energy, severe bicondylar Schatzker IV right tibial plateau fracture and underwent a closed reduction and placement of an external fixation device by Dr. Courville. The Schatzker classification system is a method of classifying tibial plateau fractures. An increase in the number type denotes increasing severity, reflecting an increase in energy imparted to the bone at the time of injury and also an increasingly worse prognosis. The most common fracture of the tibial plateau is a type II. Mr. Fitzgerald has a type IV. Dr. McNair will describe this classification system.

3

> Dr. McNair will testify that he continued to see Mr. Fitzgerald in follow-up for a period of time. On January 28, 2019 Dr. McNair discussed with Mr. Fitzgerald about obtaining an EMG nerve conduction study. On February 6, 2019 Mr. Fitzgerald, accompanied by father, followed up with Dr. McNair. Mr. Fitzgerald told Dr. McNair that he was planning on being in Florida with his parents for 4 weeks. Dr. McNair next saw Mr. Fitzgerald on May 8, 2019 where he was now 3.5 months post ORIF surgery and returned with a very stiff post-operative knee. Mr. Fitzgerald was able to get a nerve conduction study performed in Florida and was told that the peroneal nerve should show some improvement over time. Mr. Fitzgerald was also having knee stiffness at this time which significantly limited his range of motion. They discussed a lysis of adhesion procedure which was performed on May 31, 2019. Dr. McNair performed an arthroscopy of the right knee with extensive lysis of adhesions with manipulation with a good result intraoperatively. Dr. McNair saw Mr. Fitzgerald in follow-up on June 5, 2019 and June 19, 2019, where Mr. Fitzgerald informed Dr. McNair that he was planning on moving back to New Jersey to be near family. Dr. McNair will testify as to his interactions with Mr. Fitzgerald and the follow up care for his tibial plateau fracture.
>
> Dr. McNair will testify that he did not see any evidence of compartment syndrome during the time period he cared for Mr. Fitzgerald. Dr. McNair will use exhibits including medical records to aid in his testimony.

(ECF No. 130-14 at 2–5.)

On August 19, 2024, three months after he had received them, Fitzgerald moved to strike the Defendants' supplemental disclosures, arguing that "(1) they do not comply with the Rules regarding disclosure of non-retained experts; and (2) they are unquestionably late and untimely." (ECF No. 130 at 4.)

## II. APPLICABLE LAW

Rule 26 requires a party's initial disclosures to include, among other things, "the identity of any witness [the party] may use at trial to present evidence under Federal

4

Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). An expert who is not "retained or specially employed to provide expert testimony in the case" need not produce a written report, Fed. R. Civ. P. 26(a)(2)(B), but the proffering party must still disclose the subject matter of the witness's anticipated testimony and "a summary of the facts and opinions to which the witness is expected to testify," Fed. R. Civ. P. 26(a)(2)(C). A disclosure is adequate if it provides sufficient information to allow the opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002); *see also Stone v. High Mountain Mining Co., LLC*, 2022 WL 79861, at *8 (D. Colo. Jan. 7, 2022) ("Rule 26(a)(2)(C) disclosures are meant to define the scope of expert testimony so that an opposing party can be prepared to address the opinions proffered.").

"Treating physicians are the paradigmatic example of non-retained experts." *Saiz v. Jerome*, 2024 WL 4492776, at *2 (D. Colo. Mar. 26, 2024) (citing *Vanderlaan v. Ameriprise Auto & Home Ins.*, 2021 WL 4441518, at *4 (D. Colo. Sept. 28, 2021)). "Although treating sources ostensibly possess expertise in their areas of practice, the relevance of their testimony stems from their examination, diagnosis, and treatment of the party with the burden of proof." *Jerome*, 2024 WL 4492776, at *2. "Treating physicians thus are a species of percipient witness, called principally to recount what they observed and did in connection with a patient's treatment and care." *Id.* (citation and internal quotation marks omitted). By contrast, "[g]enerally, when a treating physician opines as to causation, prognosis, or future disability, . . . [he] is going beyond his personal involvement in the facts of the case and giving an opinion formed because

5

there is a lawsuit." *Scholl v. Pateder*, 2011 WL 2473284, at *4 (D. Colo. June 22, 2011) (citation and internal quotation marks omitted).  In most cases, therefore, an expert may offer such opinions only if they have produced a report that complies with Rule 26(a)(2)(B).

Because "Rule 26(a)(2)(C) disclosures are meant to define the scope of expert testimony so that an opposing party can be prepared to address the opinions proffered," *Stone v. High Mountain Mining Co.,* 2022 WL 79861, at *8 (D. Colo. Jan. 7, 2022), an expert "cannot satisfy [their] obligations under Rule 26(a)(2)(C) by merely providing a list of topics on which the witness is expected to testify." *Harlas v. Barn, LLC*, 2019 WL 7290928, at *6 (D. Colo. Oct. 1, 2019); *see also Emerson Electric Co. v. Suzhou Cleva Electric Appliance Co.*, 2015 WL 8770712, at *2 (E.D. Mo. Dec. 15, 2015) ("Courts have found that a party cannot comply with its disclosure obligations under this rule by merely stating the topic that will be discussed at a high level.") (citing cases).  While Rule 26(a)(2)(C) does not require a disclosure to "outline each and every fact to which the non-retained expert will testify," *Chambers v. Fike*, 2014 WL 3565481, at *7 (D. Kan. July 18, 2014), "it must state: '(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.'" *Tuft v. Indem. Ins. Co. of N. Am.*, 2021 WL 1759638, at *3 (D. Colo. Feb. 18, 2021) (quoting Fed. R. Civ. P. 26(a)(2)(C)).

Where a party "violates his discovery obligations under Rule 26, he 'is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *Hellen v. Am. Fam. Ins. Co.*, 2024 WL

6

1194048, at *3 (D. Colo. Mar. 7, 2024) (quoting Fed. R. Civ. P. 37(c)(1)).  "In exercising its 'broad discretion' to determine whether a violation of the rule was justified or harmless, *see Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999), the court should consider '(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness,' *Jacobsen*, 287 F.3d at 953 (citation and internal quotation marks omitted)."  *Bettmann v. Owners Ins. Co.*, 2024 WL 1829263, at *5 (D. Colo. Feb. 12, 2024).  The non-moving party "bears the burden to prove its discovery lapses were substantially justified or harmless."  *Id.* (citing *Bosier v. Am. Family Mut. Ins. Co.*, 2019 WL 1254940, at *3 (D. Colo. March 19, 2019)).

### III. ANALYSIS

Fitzgerald contends that McNair's opinions contained in Defendants' supplemental disclosures "exceed[] the scope of a Rule 26(a)(2)(C) witness and inappropriately convert[] Dr. McNair to a Rule 26(a)(2)(B) witness."  (ECF No. 130 at 6.)  He further contends that these opinions "are unquestionably late and untimely."  (*Id.* at 4.)  The Court agrees with both contentions but ultimately concludes that the "drastic sanction" of exclusion is not warranted here.  *See Equal Emp. Opportunity Comm'n v. A&A Appliance, Inc.*, 2024 WL 5455803, at *5 (D. Colo. Oct. 8, 2024) (describing excluding expert opinions as a "drastic sanction").

#### 1.    Discovery Violation

At the outset, the Court observes that Defendants do not dispute that their May 2024 supplemental disclosures were filed after the April 1, 2024 expert witness

7

discovery deadline.  (*See generally* ECF Nos. 133, 134.)  Individual Defendants omit this fact altogether from their response, and Summit subtly mentions that it "later submitted its First Supplemental Disclosure," without specifically acknowledging that "later" meant outside the applicable deadline.  (ECF No. 134 at 2–3; ECF No. 133 at 3.)  Defendants filed these tardy disclosures without moving to amend the scheduling order or otherwise explaining why they filed outside the applicable deadline.  Hence, for this reason alone, the Court concludes that McNair's opinions, which were not timely disclosed, violate Rule 26.  *See Little v. Budd Co.*, 2018 WL 836292, at *5 (D. Kan. Feb. 13, 2018) (denying party's request for leave "to add an expert" because the request came beyond the "Scheduling Order's deadline for designating experts"); *see also In re Indep. Serv. Orgs. Antitrust Litig.*, 85 F. Supp. 2d 1130, 1162 (D. Kan. 2000) (excluding an expert declaration that was disclosed after the scheduling order's deadline because, "[a]lthough the decision to exclude evidence is a drastic sanction, plaintiff must abide by the same rules as other litigants").

The Court also concludes that Defendants' supplemental disclosures failed to comport with Rule 26(a)(2)(C)'s requirements.  As mentioned, that rule requires the disclosure of a non-retained expert witness to contain "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).  "It is not enough [for a Rule 26(a)(2)(C) disclosure] to state that the witness will testify consistent with information contained in the medical records."  *Hayes v. Am. Credit Acceptance*, LLC, 2014 WL 3927277, at *3 (D. Kan. Aug. 12, 2014).  "Instead, the disclosure must 'summarize actual and specific opinions' and, if

8

a physician is to opine on causation, explain 'how' and 'why' the physician reached a particular opinion." *Nosewicz v. Janosko*, 2019 WL 4248895, at *5 (D. Colo. Aug. 19, 2019) (citation omitted); *Vanderlaan*, 2021 WL 4441518, at *4 (requiring a party to "at least provide a brief account of the principal facts supporting [the expert's] opinions"); *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015) (holding that Rule 26(a)(2)(C) requires "a summary of facts supporting [the expert's] opinions"—*i.e.*, "a brief account of facts . . . that states the main points derived from a larger body of information").

Initially, the Court notes that Fitzgerald contends that McNair's opinions pertain to causation and, as a result, that Defendants' initial disclosure was required under Rule 26(a)(2)(C) to explain how and why McNair reached his opinion that "there was no evidence of any injury related to compartment syndrome." (ECF No. 130-13 at 3; *see also* ECF No. 130 at 9 ("Plaintiff's injuries stem from nerve damage caused by compartment syndrome and Defendants are now seeking to supplement testimony that directly contradicts the elements of Mr. Fitzgerald's claim.").) Defendants do not appear to contest that this opinion pertains to causation. (*See generally* ECF Nos. 133, 134.) Thus, whether McNair's opinions in the supplemental disclosure violate Rule 26 turns on whether the initial disclosure contained (1) "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705"; (2) "a summary of the facts and opinions to which the witness is expected to testify"; and (3) an explanation as to how and why he reached his opinions. *Tuft*, 2021 WL 1759638, at *3 (quoting Fed. R. Civ. P. 26(a)(2)(C)).

The Court concludes that Defendants' initial disclosure did not satisfy these

9

requirements sufficient to have put Fitzgerald on notice that he planned to testify that "there was no evidence of any injury related to compartment syndrome." *See Alarid v. Biomet, Inc.*, 2015 WL 5833839, at *4 (D. Colo. Oct. 7, 2015) (explaining that a disclosure is sufficient if it "obviate[s] the danger of unfair surprise" to the non-moving party). (ECF No. 130-13 at 3.) This is because the initial disclosure contained largely generic information, including that McNair

- "is expected to testify consistent with his medical records and deposition, if taken";
- "will testify as to his interactions and evaluations with plaintiff";
- "will testify as to his remarks in his medical records and his operative findings"; and
- "will testify about his surgical findings."

(ECF No. 130-12 at 11.) Several district courts have found such generic statements to be insufficient to satisfy Rule 26(a)(2)(C)'s disclosure requirements. *See, e.g.*, *Hayes*, 2014 WL 3927277, at *3 ("It is not enough [for a Rule 26(a)(2)(C) disclosure] to state that the witness will testify consistent with information contained in the medical records."); *Vanderlaan*, 2021 WL 4441518, at *6 ("Although referring to a physician's medical records is appropriate, a proper non-retained expert disclosure should also identify specifics from those records in order to meet the requirements of Rule 26(a)(2)(C).").

Defendants concede that their "expert witness disclosure did not explicitly contain the opinion that Joseph Fitzgerald did not show symptoms of compartment syndrome." (ECF No. 133 at 9.) Nevertheless, Defendants insist that the initial disclosure was good

10

enough because it contained McNair's opinion that he "saw no further muscle damage" while operating on Fitzgerald's leg.  (*Id.*; ECF No. 133 at 8 ("St. Anthony's first disclosure of Dr. McNair explains in detail the fact that Dr. McNair did not see any evidence of any additional injury . . . .").)  Defendants reason that this statement necessarily encompasses "injuries related to compartment syndrome." (*Id.*)  And they assert that Fitzgerald "need only refer to Dr. McNair's observations and medical records from his treatment of Joseph Fitzgerald in January of 2019 to adequately address and scrutinize Dr. McNair's opinions."  (ECF No. 133 at 9.)

Contrary to Defendants' assertion, however, McNair's statement that he did not perceive "further muscle damage" did not specifically inform Fitzgerald that McNair planned to testify that Fitzgerald did not suffer from compartment syndrome.  Indeed, Fitzgerald maintains that "[a]ctive tissue without signs of necrosis is not incompatible with compartment syndrome."  (ECF No. 137 at 4.)  Thus, the Court cannot say that the initial disclosure unequivocally notified Fitzgerald that McNair believed that he did not suffer from compartment syndrome.  Importantly, this proffered testimony is a "main point" and "principal fact" that needed to be specifically mentioned in the initial disclosure.  *Nosewicz*, 2019 WL 4248895, at *5 (requiring initial disclosures to summarize "specific opinions"); *Vanderlaan*, 2021 WL 4441518 at *4 (requiring "a brief account of the principal facts supporting [the expert's] opinions"); *Little Hocking Water Ass'n, Inc.*, 2015 WL 1105840, at *9 (requiring "a brief account of facts . . . that states the main points derived from a larger body of information").

Defendants' reliance on the initial disclosure's reference to medical records is likewise misplaced for at least two reasons.  First, as best the Court can tell, the initial

11

disclosure did not expressly refer to any specific medical records—instead, it merely referred to "medical records" from January 2019 generally.  (ECF No. 130-12 at 11.)  In this way, Defendants' "vague reference to a large swath of medical records and mere reliance on unsupported 'assumptions' are not sufficient to meet" Rule 26(a)(2)(C)'s standards and, as such, Fitzgerald "ha[d] no way of knowing what facts specifically serve as the basis for [McNair's] proffered opinions."  *Nosewicz*, 2019 WL 4248895, at *7.  Second, even if the onus were on Fitzgerald to comb through the January 2019 medical records to anticipate McNair's specific opinions, as Defendants suggest, doing so would not have revealed McNair's opinion that Fitzgerald did not suffer from compartment syndrome.  As Defendants concede, McNair's medical records "lack an explicit record of [his] observation of no evidence of compartment syndrome."[1]  (ECF No. 133 at 11.)

And finally, because McNair's opinion that Fitzgerald did not suffer from compartment syndrome pertains to causation, the initial disclosure was required to explain how and why he reached that conclusion.  *Nosewicz*, 2019 WL 4248895, at *5.  But the closest the initial disclosure came to explaining how McNair reached this opinion was the following: "[I]n order to fix Mr. Fitzgerald's tibial plateau fracture, [McNair] had to open up all the compartments of plaintiff's leg.  He had to take down the anterior tibial muscle and he looked specifically at the medial gastric and the soleus muscle, the deep

---

[1] Summit maintains that such an observation "was unnecessary to note" and that "[e]xpecting a treating physician to explicitly note conditions which he does not observe is not reasonable." (ECF No. 133 at 11.)  Be that as it may, Defendants cannot persuasively argue at the same time that the medical records implicitly gave Fitzgerald notice of McNair's specific opinion that he did not suffer from compartment syndrome when that opinion was nowhere to be found therein.

12

and superficial compartments posteriorly and saw no further muscle damage." (ECF No. 130-12 at 11.) And even if these statements were sufficient to explain *how* McNair reached this opinion, they did not come close to explaining *why*. Individual Defendants' detailed supplemental disclosure illustrate this deficiency, as it thoroughly explains that McNair did not diagnose compartment syndrome because "he associates compartment syndrome with muscle necrosis or death which did not occur in this case." (ECF No. 130-14 at 2.) By contrast, the initial disclosure made no mention of "muscle necrosis" or its purported relationship with compartment syndrome.

Given all this, the Court concludes that McNair's proffered causation testimony goes "beyond what was necessary to provide appropriate care for the injured party [and] steps into the shoes of a retained expert for the purposes of" Rule 26(a)(2)(B). *See id.* at *8 ("One matter that is typically 'not based on observations during the course of treatment' is the cause of a patient's injuries.") (citation omitted); *see also Stone v. Deagle*, 2006 U.S. Dist. LEXIS 90430, at *11 (D. Colo. Dec. 14, 2006) ("[W]hen a treating physician's information or opinions were developed for trial, or where [his] expert testimony will concern matters not based on observations during the course of treatment, the treating physician will be required to prepare a written report" pursuant to Rule 26(a)(2)(B).). Accordingly, Defendants' supplemental disclosure constitutes a discovery violation.

### 2.  Remedy

Notwithstanding their discovery violation, Defendants can still avoid exclusion of McNair's proffered testimony if they can persuade the Court that the *Woodworker's Supply, Inc.* factors weigh in their favor. *See Bettmann*, 2024 WL 1829263, at *5

13

(providing that the violating party bears the burden of showing that exclusion is not appropriate).  As mentioned, the Court should consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Jacobsen*, 287 F.3d at 953 *(*citing *Woodworker's Supply, Inc.*, 170 F.3d at 993).  While this issue is close—and the Court is troubled that Defendants waited over two years to supplement their disclosures (after the amended discovery deadline) with McNair's specific opinions—the Court ultimately finds that excluding the proffered testimony would not be aligned with the interest of justice in these circumstances.

As to the first factor, the Court recognizes that the admission of McNair's proffered testimony that he saw no evidence of compartment syndrome is undoubtedly prejudicial to Fitzgerald.  Defendants do not meaningfully dispute this point.  (*See* ECF No. 133 at 2 ("A primary issue in this case is whether Joseph Fitzgerald was showing symptoms of compartment syndrome following his injury, and if so, when he was showing those symptoms."); *see also id.* at 11 ("[Summit]'s purpose for using Dr. McNair as a non-retained expert witness is to contradict the elements of Joseph Fitzgerald's claim.").)  Still, while the initial disclosure did not specifically alert Fitzgerald that McNair planned to offer this opinion at trial—and thus may have caused some unfair surprise—his statement that he "saw no further muscle damage" during surgery should reasonably have caused Fitzgerald to question whether McNair might be of the further opinion that he saw no evidence of compartment syndrome.  (ECF No. 130-12 at 11.)

Yet—to the Court's great surprise—Fitzgerald inexplicably elected not to depose

14

McNair (or any other defense expert) to probe what he meant by the statements contained in his initial disclosures.  (*See* ECF No. 137 at 7 (acknowledging that he exercised "his right" to "rel[y] on the written, required disclosures and opted not to depose Dr. McNair").)  In other words, any surprise caused by Defendants' late supplemental disclosure was, to a significant degree, partially of Fitzgerald's own making.

Next, the second and third *Woodworker's Supply, Inc.* factors weigh heavily in favor of allowing Defendants to elicit McNair's proffered testimony.  Trial is set to begin on June 16, 2025—*i.e.*, about three months from the date of this Order (and nearly ten months from the date Fitzgerald filed this Motion).[2]  *See Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 605 (10th Cir. 1997) ("We cannot conclude that the plaintiffs' request for a new scheduling order would have disrupted the trial—their motion was filed eighty days before its scheduled commencement.").  Any prejudice that could result from Defendants' discovery violation can be cured with little disruption to the trial by opening discovery for the limited purpose of allowing Fitzgerald to depose McNair.

The Court will therefore *sua sponte* reopen discovery for the limited purpose of allowing Fitzgerald to depose McNair, at his own expense,[3] for no more than one day, if he chooses to do so.  *See Schmelzer v. Muncy*, 2019 WL 3842335, at *6 (S.D. Ill. Aug. 14, 2019) (ordering additional depositions on party's failure to identify witnesses as

---

[2] The Court notes, however, that Fitzgerald waited several months to file the Motion in August 2024 after he learned of Defendants' intent to proffer McNair's disputed testimony in May 2024.

[3] Other courts have required the violating party to bear the costs of reopening discovery, but this case does not warrant that remedy because Fitzgerald did not bear any cost of deposing McNair in the first place.

experts, rather than excluding the witness); *see also Beauchamp v. City of Dixon*, 2014 WL 901437, at *8 (N.D. Ill. Mar. 7, 2014) (ordering additional depositions on party's failure to identify witnesses as experts, rather than excluding the witness); *Armer v. Golden Corral Corp.*, 2013 WL 12171159, at *3 (W.D. Okla. Aug. 28, 2013) (granting defendant permission to take additional deposition of treating physician whose proposed testimony exceeded scope of treatment); *Valentin v. Cnty. of Suffolk*, 342 F. App'x 661, 662 (2d Cir. 2009) (the district court acted "within its discretion" by declining to preclude the opinions of the defendants' belatedly disclosed expert and, instead, directing the defendants to make the expert available for a deposition at plaintiff's request).

Moreover, the Court notes that, in addition to allowing the deposition of McNair, any prejudice to Fitzgerald can be further cured by extensive cross-examination and rebuttal testimony at trial. As Fitzgerald outlines in his Motion, medical professionals from Colorado, Ohio, Florida, Georgia, and New Jersey have opined and documented from 2019 to 2022 that "he suffered from compartment syndrome." (ECF No. 130 at 2.) Significantly, Fitzgerald points out that Defendant Courville "admitted in her deposition that while she could not definitively say what all the causes of Mr. Fitzgerald's nerve injury were, the compartment syndrome was a cause of the nerve injury." (*Id.*) And Fitzgerald will be free to ask McNair why he did not explicitly document in the medical records that he perceived no signs of compartment syndrome if that was his opinion all along (and that he did not develop this opinion solely for the purpose of trial).

Finally, as to the fourth factor, while there is ample evidence of negligent pretrial management of expert witness disclosures on the part of defense counsel, the Court

16

perceives no evidence of bad faith or willfulness on the part of Defendants. Notably, Fitzgerald does not even allege bad faith or willfulness until his Reply Brief. (*See* ECF No. 130 at 9–10.) And this Court will not consider arguments made for the first time in a reply brief. *Weidner v. McHale*, 2025 WL 707446, at *9 (10th Cir. Mar. 5, 2025) ("We decline to consider this argument because it is raised for the first time in Mr. Weidner's reply brief."); *Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*, 2024 WL 4884472, at *6 (D. Colo. Nov. 25, 2024) ("The Court does not consider these belated arguments, however, because they were first raised in a reply brief and thus gave Plaintiffs no opportunity to respond to them.") At any rate, the Reply Brief's one-paragraph argument on this issue does not point to any evidence of bad faith or willfulness. (ECF No. 137 at 8–9.)

Thus, on balance, the Court concludes that the *Woodworker's Supply, Inc.* factors weigh in favor of denying the Motion.

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS the following:

1. The Motion to Strike (ECF No. 130) is DENIED;

2. Discovery is REOPENED for the limited purpose of allowing Fitzgerald to depose McNair, at his own expense, for no more than one day, if he chooses to do so. Fitzgerald shall conduct this deposition by no later than **April 18, 2025**; and

3. The Trial Preparation Conference remains set for **May 30, 2025**, and the nine-day jury trial remains set to begin on **June 16, 2025**.

Dated this 19th day of March, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge